# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| ROBERTO MUÑIZ, ANTONIO TORRES-FRANCO, JUANA MUÑIZ-TORRES, LUIS ENRIQUE MUÑIZ-MUÑIZ by next friend María Muñiz-Muñiz, MARÍA MUÑIZ-MUÑIZ, EMETERIO NIETO-MEDINA, ROCÍO ANANI SAUCEDO-CARRILLO, ROSA CARRILLO-VASQUEZ, MARÍA DE BELÉN MARTÍNEZ-CASTRO, JOSÉ CALDERÓN, BELINDA VEGA, ALFONSO PALAFOX, JOSÉ SAMUEL CONTRERAS GARCÍA, JESÚS RODRÍGUEZ-PÉREZ, individually and on behalf of a class of others similarly situated, the OHIO IMMIGRANT WORKER PROJECT, and the FARM LABOR ORGANIZING COMMITTEE (FLOC), AFL-CIO, Plaintiffs, | COMPLAINT - CLASS ACTION |
| v. | No. 3:09 – 02865  Hon. Jack Zouhary |
| UNITED STATES BORDER PATROL, CUSTOMS AND BORDER PROTECTION, DEPARTMENT OF HOMELAND SECURITY; RANDY L. GALLEGOS, individually and in his capacity as Chief Patrol Agent, Detroit Sector, United States Border Patrol; RAMIRO CORONA, United States Border Patrol Agent, individually and in his official capacity; Agent MATEO, United States Border Patrol Agent, individually and in his official capacity; ANDRE DARIO, United States Border Patrol Agent, individually and in his officialcapacity; ROBERT SIMON, United States Border Patrol Agent, individually and in his official capacity; DAVID B. YORK, United States Border Patrol Agent, individually and in his official capacity; S. WRISLEY, United States Border Patrol Agent, | |

individually and in his official capacity;           )
JOHN DOES 1 – 9, United States Border Patrol         )
Agents assigned or working from the Sandusky,        )
Ohio, United States Border Patrol Station,           )
individually and in their capacity                   )
as Border Patrol Agents; VILLAGE OF ATTICA,          )
OHIO; JEFFREY A. BRIGGS, former chief of             )
Attica Ohio Police Department, individually;         )
POLICE CHIEF OF ATTICA OHIO                          )
POLICE DEPARTMENT, in his or her                     )
official capacity; CITY OF NORWALK, OHIO;            )
CHIEF DAVE LIGHT, NORWALK OHIO                       )
POLICE DEPARTMENT, individually and in              )
his official capacity; VILLAGE OF                    )
PLYMOUTH, OHIO; CHIEF CHARLES D. DOAN,              )
PLYMOUTH OHIO POLICE DEPARTMENT,                    )
individually and in his official capacity;          )
JOHN DOES 10 - 12, Attica Ohio Police               )
Department officers, individually and in their      )
official capacities; JOHN DOES 13 - 15, Norwalk     )
Ohio Police Department officer, individually        )
and in their official capacities; and, JOHN DOES    )
16 – 17, Plymouth Police Department officers,        )
individually and in their official capacities,      )
                                                     )
                Defendants.                          )

**COMPLAINT FOR CLASSWIDE DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     The individual Plaintiffs and class members are Hispanics.  The organizational

       plaintiffs, the Ohio Immigrant Worker Project (IWP) and the Farm Labor

       Organizing Committee, AFL-CIO (FLOC), work with and organize Hispanics to

       vindicate their rights and to enhance their lives.  The individual Plaintiffs and

       members of both the IWP and FLOC have been restrained, interrogated, and

       sometimes arrested by the Defendants.

2.     Plaintiffs bring this lawsuit to remedy their and their members being restrained

       (seized) and interrogated by Ohio law enforcement agencies and United States

Border Patrol agents about their immigration status because they are Hispanics. This restraint, interrogation, and arrest regarding immigration status based solely on their being Hispanic will be referred to herein as "profiling."

3.    This profiling of Hispanics for immigration status questioning is done even though Ohio local law enforcement authorities have no jurisdiction regarding the enforcement of the civil provisions of federal immigration law and the Border Patrol agents were and are without reasonable suspicion or probable cause to believe Plaintiffs and the class members are non-citizens in the United States without proper authorization.

4.    Plaintiffs and class members seek relief against the illegal and unconstitutional actions of the Border Patrol Agents stationed at or working out of the Sandusky Station, Detroit Sector, of the U.S. Border Patrol.  Agents of that Station are engaged in a pattern or practice of restraining, interrogating, and arresting persons regarding their immigration status based on their being Hispanic.  These seizures and interrogations have taken place in bus stations, gas stations, retail establishments, during traffic stops, at soccer games, and in other public settings.

5.    The actions of the Border Patrol agents have caused fear and concern in Hispanic communities.

6.    The actions of the Border Patrol agents violate the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, the 4th Amendment prohibition against unreasonable searches and seizures, and the 5th Amendments' guarantees of Due Process and Equal Protection of the law.

7.    The Border Patrol has also held seminars, meetings, or has otherwise communicated with local law enforcement agencies in Northwest Ohio urging them to restrain and interrogate Hispanics regarding their immigration status.

8.    The Border Patrol has also stated to these local law enforcement agencies that the Border Patrol will come and restrain and interrogate persons that the local law enforcement agencies have already seized based on the profiling activities of the agencies.

9. Local law enforcement authorities in Ohio, including the Defendant Attica, Norwalk, and Plymouth police departments, have profiled and stopped, restrained, and interrogated the individual Plaintiffs and class members regarding their immigration status. These actions violate the 4th Amendment's prohibition of unreasonable searches and seizures and the 14th Amendment's guarantees of Due Process and Equal Protection of the law.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), 42 U.S.C. §§ 1983, 1985(3), and 1986, and 5 U.S.C. § 702 (Administrative Procedure Act). Because this lawsuit alleges violations of the United States Constitution as well as violations of federal statutes and regulations, it raises questions of federal law. The actions of the Defendants also constitute a conspiracy to deprive the individual plaintiffs, the class, and members of the IWP and FLOC of their constitutional rights to due process and equal protection of the laws and protection against unreasonable searches and seizures.

11. This Court has the authority to grant injunctive relief, declaratory relief, and other related relief pursuant to 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PLAINTIFFS

13. Plaintiff Rocío Anani Saucedo-Carrillo is a Hispanic female resident of Norwalk, Huron County, Ohio. She is married with two children. She is a 2005 graduate of Norwalk High School. She was restrained, interrogated and arrested by a

Border Patrol Agent at a Marathon gas station in Norwalk, Ohio, on September 13, 2009.

14. Rosa Carrillo-Vasquez is a Hispanic female resident of Norwalk, Huron County, Ohio. She was restrained, interrogated, and arrested by a Border Patrol Agent at a Marathon gas station in Norwalk, Ohio, on September 13, 2009.

15. Emeterio Nieto-Medina is a Hispanic male resident of McAllen, Hidalgo County, Texas, and works and lives during the agricultural season in Willard, Huron County, Ohio. He was restrained and interrogated about his immigration status by Village of Attica, Ohio, police officers on September 27, 2009.

16. Roberto Muñiz is a Hispanic male resident of Tulsa, Oklahoma. He was restrained and interrogated about his immigration status by a Village of Attica, Ohio, police officer on September 27, 2009. At the time Mr. Muñiz was temporarily residing in an agricultural labor camp in Willard, Huron County, Ohio.

17. María Muñiz-Muñiz is a Hispanic female resident of Tulsa, Oklahoma. She was restrained and interrogated about her immigration status by a Village of Attica, Ohio, police officer on September 27, 2009. At the time Mrs. Muñiz was temporarily residing in an agricultural labor camp in Willard, Huron County, Ohio.

18. Antonio Torres-Franco is a Hispanic male resident of McKinney, Collin County, Texas. He was restrained and interrogated about his immigration status aby Village of Attica, Ohio, police officer on September 27, 2009. At the time Mr.

Torres was temporarily residing in an agricultural labor camp in Willard, Huron County, Ohio.

19. Juana Muñiz-Torres is a Hispanic female resident of McKinney, Collin County, Texas. She was restrained and interrogated about her immigration status by a Village of Attica, Ohio, police officer on September 27, 2009. At the time Mrs. Muñiz was temporarily residing in an agricultural labor camp in Willard, Huron County, Ohio, with her husband, Antonio Torres-Franco.

20. Luis Enrique Muñiz-Muñiz, a minor, is a Hispanic male resident of Tulsa, Oklahoma. He was restrained and interrogated about his immigration status by a Village of Attica, Ohio, police officer on September 27, 2009. At the time Mr. Muñiz was temporarily residing at an agricultural labor camp in Willard, Huron County, Ohio, with his parents, Roberto Muñiz and María Muñiz-Muñiz. He is a minor and this action is brought on his behalf by his mother, María Muñiz-Muñiz.

21. María de Belén Martínez-Castro is a Hispanic female resident of Norwalk, Huron County, Ohio. She has been followed on several occasions and asked her immigration status by a Norwalk Police Department officer when she was escorting her son from school.

22. José Calderón is a Hispanic male resident of Donna, Hidalgo County, Texas. During the incidents related herein he was living in an agricultural labor camp in Willard, Huron County, Ohio. He has been restrained and interrogated about

his immigration status on at least three occasions by Village of Plymouth, Ohio, police officers.

23.   Belinda Vega, the wife of Plaintiff José Calderón, is a Hispanic female resident of Donna, Hidalgo County, Texas.  During the incidents related herein she was living in an agricultural labor camp in Willard, Huron County, Ohio.  She has been restrained and interrogated about her immigration status on at least three occasions by Village of Plymouth, Ohio, police officers.

24.   Alfonso Palafox is a Hispanic male resident of Fremont, Sandusky County, Ohio. He was restrained and interrogated on the street in Fremont, Ohio, by Border Patrol agents on November 3, 2009.

25.   José Samuel Contreras García is a Hispanic male resident of Ixtapaluca, Estado de Mexico, Mexico.  He was restrained, interrogated, and arrested by Border Patrol Agents at the Toledo, Ohio, Greyhound bus station on December 17, 2009.

26.   Jesús Rodríguez-Pérez is a Hispanic male resident residing in Mexico.  He was restrained, interrogated, and arrested by Border Patrol Agents at the Toledo, Ohio, Greyhound bus station on December 29, 2009.

27.   The Ohio Immigrant Worker Project (IWP), an unincorporated association, is dedicated to the struggle for justice and human dignity for Ohio's rural immigrant workers from Latin America.  The Projects's membership includes persons who have been and/or are imminently susceptible to being injured by Defendants' unlawful practices, as well as family members of such persons. Most, if not all, of IWP's members are Hispanic.

28.   The Farm Labor Organizing Committee, AFL-CIO (FLOC), an Ohio non-profit corporation, is both a social movement and a labor union.  FLOC's membership includes persons who have been and/or are imminently susceptible to being injured by Defendants' unlawful practices, as well as family members of such persons.  Most, if not all, of FLOC's members are Hispanic.

## DEFENDANTS

29.   Defendant United States Border Patrol is a subagency of Customs and Border Protection, an agency of the U.S. Department of Homeland Security, and exists under the Constitution and laws of the United States.

30.   Defendant Randy L. Gallegos is the Chief Agent of the Detroit Border Patrol Sector.  As Chief Agent Defendant Gallegos is the supervisor of the Detroit, Gibraltar, Marysville, Sault Sainte Marie, and Sandusky Border Patrol Stations that encompass the Detroit Sector.  Gallegos oversees the daily activities of the Border Patrol Agents within those five Stations and is responsible for ensuring that their duties are carried out in a legal manner.  At all relevant times, Defendant Gallegos was acting under color of law, as an agent, employee, and/or representative of the United States.  Defendant Gallegos is sued in his individual and official capacities.

31.   Defendant Ramiro Corona is a Border Patrol Agent.  At all relevant times, Defendant Corona was acting under color of law, as an agent, employee, and/or representative of the United States.  He is sued in his individual and official capacities.

32. Defendant Andre Dario is a Border Patrol Agent. At all relevant times, Defendant Dario was acting under color of law, as an agent, employee, and/or representative of the United States. He is sued in his individual and official capacities.

33. Defendant Mateo is a Border Patrol Agent. At all relevant times, Defendant Mateo was acting under color of law, as an agent, employee, and/or representative of the United States. He is sued in his individual and official capacities.

34. Defendant Robert Simon is a Border Patrol Agent. At all relevant times, Defendant Simon was acting under color of law, as an agent, employee, and/or representative of the United States. He is sued in his individual and official capacities.

35. Defendant David B. York is a Border Patrol Agent. At all relevant times, Defendant York was acting under color of law, as an agent, employee, and/or representative of the United States. He is sued in his individual and official capacities.

36. Defendant S. Wrisley is a Border Patrol Agent. At all relevant times, Defendant Wrisley was acting under color of law, as an agent, employee, and/or representative of the United States. He is sued in his individual and official capacities.

37. Defendants John Does 1 – 9 are Border Patrol Agents assigned to or working out of the Sandusky, Ohio, Border Patrol Station. These unknown and unnamed

Agents are restraining, interrogating and arresting Plaintiffs, Hispanics, and the members of the class without reasonable suspicion or probable cause that they are aliens without a right to be or to remain in the United States.  At all relevant times, Defendants John Does 1 – 9 were acting under color of law, as agents, employees, and/or representatives of the United States.  They are sued in their individual and official capacities.

38.   Defendant Village of Attica (Attica) is a political subdivision of the State of Ohio that can sue and be sued in its own name.  Upon information and belief, Defendant Attica includes, operates, governs, and is responsible for the Attica Police Department pursuant to the laws of the State of Ohio.

39.   Defendant Jeffrey A. Briggs is the former Police Chief of the Attica, Ohio Police Department in Seneca County, Ohio.  At the time of the incidents detailed herein he was the Police Chief of Attica, Ohio.  As such he was responsible for the policies, practices, and customs of the Attica Police Department.  The Police Chief also directs the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under his supervision and command.  At all relevant times Defendant Briggs was acting under color of law.  He is sued in his individual capacity.

40.   Defendant Police Chief of Attica Ohio Police Department is the Police Chief of the Attica, Ohio Police Department in Seneca County, Ohio, and is responsible for the policies, practices, and customs of the Attica Police Department.  The Police Chief also directs the hiring, screening, training, retention, supervision,

discipline, counseling, and control of the police officers under his supervision and command.  At all relevant times Defendant Police Chief was acting under color of law.  He is sued in his official capacity.

41. Defendant City of Norwalk is a political subdivision of the State of Ohio that can sue and be sued in its own name.  Upon information and belief, Defendant Norwalk includes, operates, governs, and is responsible for the Norwalk Police Department pursuant to the laws of the State of Ohio.

42. Defendant Dave Light is the Police Chief of the Norwalk, Ohio Police Department in Huron County, Ohio, and is responsible for the policies, practices, and customs of the Norwalk Police Department.  Defendant Light also directs the hiring, screening, training, retention, supervision, discipline, counseling, and control of the police officers under his supervision and command.  At all relevant times Defendant Light was acting under color of law.  He is sued in his individual and official capacities.

43. Defendant Village of Plymouth is a political subdivision of the State of Ohio that can sue and be sued in its own name.  Upon information and belief, Defendant Plymouth includes, operates, governs, and is responsible for the Plymouth Police Department pursuant to the laws of the State of Ohio.

44. Defendant Charles D. Doan is the Police Chief of the Plymouth, Ohio Police Department in Huron and Seneca Counties, Ohio, and is responsible for the policies, practices, and customs of the Plymouth Police Department.  Defendant Doan also directs the hiring, screening, training, retention, supervision,

discipline, counseling, and control of the police officers under his supervision and command.  At all relevant times Defendant Doan was acting under color of law.  He is sued in his individual and official capacities.

45.  Defendants John Does 10 - 12 are police officers of the Attica, Ohio Police Department.  At all relevant times, John Does 10 – 12 were acting under color of law.  Plaintiffs are not aware of their identities after reasonable efforts, but will amend this complaint to add or substitute them as named Defendants when Plaintiffs become aware of their identities.  At all relevant times, Defendants John Does 10 - 12 were acting under color of law, as agents, employees, and/or representatives of the Attica Ohio Police Department.  They are sued in their individual and official capacities.

46.  Defendants John Does 13 - 15 are police officers of the Norwalk, Ohio Police Department.  At all relevant times, John Does 13 - 15 were acting under color of law.  Plaintiffs are not aware of their identities after reasonable efforts, but will amend this complaint to add or substitute them as named Defendants when Plaintiffs become aware of their identities.  At all relevant times, Defendants John Does 13 - 15 were acting under color of law, as agents, employees, and/or representatives of the Norwalk Ohio Police Department.  They are sued in their individual and official capacities.

47.  John Does 16 and 17 are police officers of the Plymouth, Ohio Police Department. At all relevant times, John Does 16 - 17 were acting under color of law.  Plaintiffs are not aware of their identities after reasonable efforts, but will amend this

complaint to add or substitute them as named Defendants when Plaintiffs become aware of their identities.  At all relevant times, Defendant John Does 16 - 17 were acting under color of law, as agents, employees, and/or representatives of the Plymouth Police Department.  They are sued in their individual and official capacities.

## CIVIL IMMIGRATION ENFORCEMENT – LEGAL BACKGROUND

### Local Law Enforcement Agencies' Lack of Authority to Enforce Immigration Law

48.  State and federal law do not authorize local authorities such as Defendants Briggs, Attica Police Chief, Doan, Light and John Does 10 – 17, to arrest or detain individuals based on suspected *civil* immigration violations.  *FLOC v. Ohio State Highway Patrol*, 991 F.Supp. 895, 904 (N.D. Ohio 1997); *Gonzales v. City of Peoria*, 722 F.2d 468, 472-75(9th Cir. 1983); *Mena v. City of Simi Valley*, 322 F.3d 1255, 1265 n. 15 (9th Cir. 2003), *vacated and remanded sub nom. Muehler v. Mena*, 544 U.S. 93 (2005); *Carrasca v. Pomeroy*, 313 F.3d 828, 837 (3d Cir. 2002);  Ohio Op. Att'y Gen. 2007-18.

49.  Federal law preempts local law enforcement agencies from enforcing civil immigration law except as specifically provided by statute.   Local law enforcement agencies may enforce *criminal* immigration law within the restrictions of state law.  Ohio Op. Att'y Gen. 2007-18

50.  In Ohio, local law enforcement authorities may make warrantless arrests only where they have probable cause to believe the arrestee has committed a crime in

their presence and certain specified crimes and felony offenses outside their presence.  Ohio Revised Code § 2935.03.

51.     None of the defendant local police departments here have entered into an agreement with the United States pursuant to 8 U.S.C. § 1357(g) to authorize their police officers to enforce civil immigration law.  So called "287(g) agreements" require that local law enforcement officers receive five weeks of training on federal immigration law and that they remain under the supervision of immigration enforcement officers after that training.

**Limits on Border Patrol Agents' Authority to Make Warrantless Arrests and Issue Immigration Detainers**

52.     Border Patrol Agents are authorized to arrest individuals without a warrant only if they (a) have reason to believe that the individuals are in the United States in violation of immigration law, and (b) have reason to believe that the individuals are likely to escape before a warrant can be obtained for their arrest.  8 U.S.C. § 1357.

53.     Border Patrol Agents must provide certain procedural protections to individuals arrested for civil immigration violations without a warrant.  These protections include: the right to be examined by a non-arresting officer without unnecessary delay; notice of the charges against them and their right to a hearing with counsel at their own expense; lists of available pro bono counsel and free legal services; and notice that statements made by the arrestee may be used against him in a subsequent proceeding.  8 U.S.C. §§ 1226, 1229, 1357; 8 C.F.R. § 287.3.  A

bond determination and a decision whether to issue a Notice to Appear must be made within 48 hours of arrest except in the case of emergency or extraordinary circumstances. *Id.*

54.     8 C.F.R. § 287.7 allows Border Patrol Agents to issue immigration detainers requesting that other law enforcement agencies maintain custody of a suspected noncitizen already within that law enforcement agency's custody on an independent civil or criminal charge, to permit the Border Patrol to assume custody of the suspected noncitizen.     8 C.F.R. § 287.7 does not, however, authorize Border Patrol Agents to issue immigration detainers to instruct local law enforcement agencies to detain or arrest individuals who are not already in the custody of those agencies.

**Civil Immigration Enforcement By Attica, Norwalk and Plymouth Police**

**Departments Unaccompanied By Border Patrol Agents**

55.     Defendants Attica, Norwalk, Plymouth, former Police Chief Briggs, Attica Police Chief, Light, Doan and John Does 10 – 17 have adopted the policy, practice, and custom of stopping, detaining, questioning, and/or searching Hispanics and interrogating them about their immigration status outside the presence of Border Patrol Agents.

56.     These racially-motivated stops or restraints are frequently unsupported by reasonable suspicion or probable cause that the person or persons stopped have violated any criminal law.

- 15 -

57.     Even where such stops may be initially supported by reasonable suspicion of criminal activity or traffic infractions, Defendants Attica, Norwalk, Plymouth, Attica Police Chief, Light, Doan and John Does 10 – 16 have adopted the policy, practice, and custom of prolonging the initial stop to interrogate individuals about their immigration status and sometimes conducting searches of their persons and vehicles despite having neither any criminal basis to prolong the detention nor any investigatory or safety justification for the searches.  Upon information and belief, the individual's being Hispanic is cause for the Defendants' prolonged detention, interrogation, and search of such individuals.

58.     The failure of all federal and state Defendants to provide the procedural protections required by 8 U.S.C. § 1357 and 8 C.F.R. 287.3 to civil immigration detainees arrested, or subjected to prolonged detention, without a warrant violate the due process rights of those detained under the 5th and 14th Amendments of the United States Constitution.

59.     Plaintiffs are informed and believe the Border Patrol Agents assigned to the Sandusky, Ohio Border Patrol Station have targeted Hispanics in the area for restraint and interrogation regarding their immigration status without any reasonable suspicion or probable cause that the individual Hispanic has no right to be or to remain in the United States.

60.     Plaintiffs are informed and believe the Agents assigned to the Sandusky Station have adopted a pattern or practice of targeting Hispanics encountered in public

settings for restraint and interrogation and without any specific articulable facts other than their being Hispanic.

61.  Plaintiffs are informed and believe the Sandusky Border Patrol Station and its officers have held seminars, trainings or otherwise communicated with numerous local law enforcement agencies, including the Defendant Attica, Norwalk, and Plymouth Police Departments, encouraging those local law enforcement agencies to target Hispanics for restraint and interrogation about their immigration status.

62.  Plaintiffs are informed and believe and therefore allege that each of the Defendants caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries alleged here, by, among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct; by failing to take action to prevent the unlawful conduct; by failing or refusing with deliberate indifference to maintain adequate training and supervision; and/or by ratifying the unlawful conduct taken by employees under his direction and control.  Plaintiffs are informed and believe and therefore allege that Defendants' actions were pursuant to a policy, custom or usage of the Border Patrol, the Attica, Norwalk and Plymouth police departments, or other related agencies.

## INDIVIDUAL PLAINTIFFS' EXPERIENCES

### Plaintiffs Rocío Anani Saucedo-Carrillo and Rosa Carrillo-Vasquez

63.    Plaintiff Rocío Anani Saucedo-Carrillo (Saucedo) parked at a gas pump in the Marathon gasoline station on U.S. 250/Milan Road, in Norwalk, Huron County, Ohio, in the early afternoon of September 13, 2009.

64.    Saucedo went into the station to pay in advance and when she exited the station to return to the pump she saw a Border Patrol Chevrolet Suburban SUV traveling on Rte. 250.

65.    After seeing Plaintiff Saucedo, the Border Patrol officer quickly pulled into the Marathon gas station and parked his car directly in front of and perpendicular to Plaintiff Saucedo's pickup truck, blocking Plaintiff Saucedo's exit.

66.    Saucedo's pickup truck has Ohio license plates.

67.    The Border Patrol Agent, John Doe 1, dressed in a green uniform, exited the Border Patrol vehicle and approached her as she was pumping gas.

68.    Border Patrol Agent John Doe 1 started interrogating Saucedo in English. He did not introduce himself nor explain why he approached her. He asked for an ID. He then asked for her "papers," which she understood to mean immigration documents. He then asked for her resident card. She presented an unexpired Michigan driver's license to John Doe 1.

69.    Saucedo did not believe she was free to leave the Marathon station or refuse to answer the Agent's questions due to his blocking her exit with his vehicle, his uniform, and the aggressive form of his questioning.

70.    Eventually John Doe 1 told Saucedo to move her pickup truck from the gas pump area to a small parking lot on the side of the building.

71.  John Doe 1 then interrogated Saucedo's mother, Plaintiff Rosa Carrillo-Vasquez (Carrillo), a passenger in Saucedo's pickup truck, about her immigration status.

72.  Plaintiff Carrillo did not believe she was free to leave nor to refuse to answer John Doe 1's questions based on his ordering Plaintiff Saucedo to move her pickup truck, John Doe 10's uniform, and the nature of the questions and Doe 1's tone of voice.

73.  John Doe 1 then arrested Plaintiffs Saucedo and Carrillo.

74.  Plaintiff Saucedo asked John Doe 1 if she could give the keys to her vehicle to a young woman Saucedo knew who was walking past the Marathon gas station.

75.  The Agent gave Plaintiff Saucedo permission to give her truck's keys to Saucedo's acquaintance.

76.  John Doe 1 then placed the Plaintiffs in the locked part of his Border Patrol vehicle.

77.  On the way to the Border Patrol Station in Sandusky, Plaintiff Saucedo started to cry.  John Doe 1 told her "No tears, or you'll leave (the United States) right now."

78.  Plaintiff Saucedo was seven months pregnant on September 13, 2009, and has since delivered her baby.

79.  John Doe 1 then transported Plaintiffs Saucedo and Carrillo to the Sandusky Border Patrol Station where they were fingerprinted, photographed and interrogated further.

80.     Plaintiffs Saucedo and Carrillo signed documents requesting an immigration hearing before an Immigration Judge presented to them by John Doe Border Patrol Agents.

81.     A relative of the Plaintiffs came to pick them up in Sandusky and take them back to their homes in Norwalk.

82.     The next day, September 14, 2009, John Doe 1 called Plaintiff Saucedo and told her he needed her and Plaintiff Carrillo's signatures on some documents he had failed to have them sign on the 13th.  The Plaintiffs met with John Doe 1 around noon in Norwalk and signed as requested.

83.     Plaintiffs Saucedo and Carrillo are agricultural workers and at the time of their arrest by John Doe 1 were so employed.

84.     Upon information and belief the Sandusky Border Patrol Station has also restrained, interrogated and arrested Hispanics at soccer games, in grocery stores, and at the same gasoline station as Plaintiffs Saucedo and Carrillo.

85.     Upon information and belief the restraint and interrogation of Hispanics by the Sandusky Border Patrol Station Agents was not based on reasonable suspicion or probable cause, but solely on their being Hispanics.

86.     Upon information and belief the Sandusky Border Patrol has restrained and interrogated persons who were or are U.S. citizens, Lawful Permanent Residents, or immigrants lawfully admitted and present in the United States.

**Plaintiffs Roberto Muñiz, Emeterio Nieto-Medina, María Muñiz-Muñiz, Antonio Torres-Franco, Juana Muñiz-Torres, and Luis Enrique Muñiz-Muñiz**

87.  Plaintiff Roberto Muñiz (Muñiz) was stopped by the Attica Police Department Officer John Doe 10 on or about September 27, 2009.  John Doe 10 There were a total of six persons in the Muñiz pickup truck.  Two occupants of the vehicle, Emeterio Nieto-Medina and Muñiz's minor son, Luis Enrique Muñiz-Muñiz, were immediately ordered to exit the vehicle and were placed in the Attica Police Department vehicle in the locked passenger area of the vehicle by John Doe 10.

88.  John Doe 10 then asked  Plaintiff Muñiz, the driver, for his driver's license and Muñiz then presented a valid Ohio driver's license.  John Doe 10 then asked Muñiz and the other three occupants of the vehicle for their immigration documents and "who doesn't have papers?"  The pretext for the stop was that the light on the rear license plate was "too dim."  No ticket was issued by the Attica Police Department.

89.  Plaintiff Emeterio Nieto-Medina was a passenger in the vehicle driven by Plaintiff Roberto Muniz when stopped by the Attica Police Department as described in paragraph 87 *supra*.

90.  Mr. Nieto was riding in the back of Mr. Muniz's pickup truck within a camper shell.  When stopped by the Attica Police Department the John Doe 10 shined a flashlight into the camper shell, ordered Mr. Nieto out, searched him, and then placed Mr. Nieto in the locked back seat of the Attica police car.

91.  The Attica police officer asked Mr. Nieto for his "papers" and whether he was "illegal."

92.  Plaintiff María Muñiz-Muñiz (Muñiz-Muñiz) was a passenger in the truck driven by her husband, Plaintiff Roberto Muñiz, when stopped by the Attica Police Department as described in paragraph 87 *supra*.

93.  Mrs. Muñiz-Muñiz heard the Attica Police Department officer ask her and the other occupants of the vehicle whether anyone was "illegal" and for their "documents."  By "documents" the officer meant immigration documents.

94.  Plaintiff Antonio Torres-Franco was a passenger in the vehicle driven by Plaintiff Roberto Muniz when stopped by the Attica Police Department as described in paragraph 87 *supra*.

95.  Mr. Torres heard the Attica Police Department officer ask him and the other occupants of the vehicle whether anyone was "illegal" and for their "documents."  By "documents" the officer meant immigration documents.

96.  Plaintiff Juana Muñiz-Torres was a passenger in the vehicle driven by Plaintiff Roberto Muniz when stopped by the Attica Police Department as described in paragraph 87 *supra*.

97.  Mrs. Muñiz-Torres heard the Attica Police Department officer ask her and the other occupants of the vehicle whether anyone was "illegal" and for their "documents."  By "documents" the officer meant immigration documents.

98.  Plaintiff Luis Enrique Muñiz-Muñiz was a passenger in the vehicle driven by his father, Plaintiff Roberto Muniz, when stopped by the Attica Police Department as described in paragraph 87 *supra*.

99.     Mr. Muñiz-Muñiz was riding in the back of his father's pickup truck within a camper shell. When stopped by the Attica Police Department John Doe 10 shined a flashlight into the camper shell, ordered Mr. Muñiz-Muñiz out, searched him, and then placed Mr. Muñiz-Muñiz in the locked back seat of the Attica police car.

100.    John Doe 10 asked Mr. Muñiz-Muñiz for his "papers" and whether he was "illegal."

101.    The length of the stop far exceeded the time for a traffic stop, even though no traffic citations were issued. The stop here prolonged the initial stop to interrogate individuals about their immigration status and conduct searches of their persons and vehicle despite having the Attica police officer having neither any criminal basis to prolong the detention nor any investigatory or safety justification for the searches.

102.    Plaintiffs Roberto Muñiz, Emeterio Nieto-Medina, María Muñiz-Muñiz, Antonio Torres-Franco, Juana Muñiz-Torres, and Luis Enrique Muñiz-Muñiz were restrained throughout this encounter and did not believe they were free to leave.

**Plaintiff María de Belén Martínez-Castro**

103.    Plaintiff María de Belén Martínez-Castro was pregnant and escorting her son from school when she was approached by a Norwalk police officer, John Doe13, who asked her if she was "legal." She responded: "Why are you asking me? Because I'm brownie?" John Doe 13 stopped questioning her and left.

104.    On several other occasions Norwalk police officers, John Does 14 and 15, followed her while she was taking her son from or to his elementary school in Norwalk.  On one occasion she was followed by a Norwalk police officer.  On the other occasion she was followed when she went into a drug store.  A Norwalk police officer who had followed her parked his car and waited for her outside of the drug store.  When she came out of the drug store she walked home while the Norwalk police officer watched her.

105.    The stop, interrogation, and observations of Plaintiff were not based on any suspicion of criminal activity and were based solely on Plaintiff being Hispanic.

### Other Evidence of Discriminatory Intent by Defendants

106.    The Norwalk Police Department has adopted an official policy or custom of reporting persons believed to be civil immigration violators to the Border Patrol.  On June 9, 2009, at 3:54 p.m. Captain Jack O'Neil of that Department sent the following email to "All Police Personnel":

> "Bradley Beldin from the United States Border Patrol stopped in and spoke to me.  He wanted us to be aware they are here to help us with any illegal Alien (sic) problems we encounter.  He advised if you have illegals and need help you can call them and they will come out to assist with interrogations and even as far as arresting them with being here illegally.
> I put his card on the board in the officers room.  Also he advised they do not have to have charges against them for them to come out and assist and to have them deported.  There (sic) office is in Sandusky.
>
> Bradley Beldin
> Border Patrol Agent
> Sandusky Bay Agent

> Office: (419) 624-0009
> Fax: (419) 624-0011
> Dispatch: (800) 537-3220
> Cell: (567) 2289042          ″

107.   Upon information and belief "All Police Personnel" in the previous paragraph refers to all Norwalk Police Department personnel.  This email was received from the Norwalk Police Department in answer to an Open Records Act request from ABLE in June, 2009.

108.   Norwalk Police Department officers also responded to a Border Patrol restraint and interrogation of three Hispanics at the same gasoline station noted in paragraphs 63 through 85 *supra*.  This incident took place on September 16, 2009.  The Border Patrol agents approached two Hispanic men at the gasoline station to question them about their immigration status.   When the men fled the scene Norwalk Police assisted Border Patrol Agents in the search for an hour to an hour and a half.  The Border Patrol Agent at the scene, Corey Bammer, was quoted as saying "I'd hesitate to call it a manhunt," but declined to say why the suspects were initially approached by the Border Patrol Agents.   Upon information and belief the suspects were initially approached by the Border Patrol Agents because they were Hispanic and the intended restraint and interrogation concerned alleged civil immigration violations, not criminal ones.

109.   Upon information and belief the Norwalk Police Department and its officers have adopted a custom, policy or practice of profiling Hispanics for stops,

restraint, and interrogation about their immigration status based solely on their status as Hispanics.

**Plaintiffs Belinda Vega and José Calderón**

110. Plaintiffs Belinda Vega and José Calderón and their two young children, ages 5 and 4, were restrained and interrogated on three separate occasions by officers of the Plymouth, Ohio, Police Department, John Does 16 – 17.

111. The first incident occurred on or about Sunday, June 28, 2009, at 1 p.m.  Plaintiffs Belinda Vega and José Calderón and their minor children were stopped about two or three miles outside of Plymouth, on their way to Mansfield.  The speed limit on the road is 35 miles per hour, and the stated reason for the stop was speeding.  Plaintiff José Calderón is sure that he wasn't speeding because he recalls that the road was very bumpy and he was driving slowly.

112. John Doe 17 approached the driver's window and asked Calderón for his license and registration. Calderón did not produce his license, so John Doe 17 told Calderón to write down his name, date of birth, and Social Security number.

113. John Doe 17 then went back to the Plymouth Police Department car and informed John Doe 16, who was sitting in the driver's seat, of Calderón's information. The Plaintiffs saw Defendant John Doe 16 on his computer. After being stopped for about 10 minutes, John Doe 16 returned to the Plaintiff's truck

and informed Calderón that he was free to go.  No citation or warning was issued.

114.  The second incident occurred on or about Sunday, August 9, 2009, at 10:00 a.m. Plaintiffs Vega and Calderón, along with their young children, were stopped in Plymouth on their way to the Dollar General store. On this occasion, the same John Does 16 - 17 approached the vehicle.  John Doe 17 stood outside of Vega's (passenger) window, and John Doe 16 stood outside of Calderón's (driver) window.  Both Plaintiffs were asked for identification and proof of registration.

115.  Plaintiffs' identification cards were in the vehicle, but they did not want to search for them because they suspected they were being profiled and because their documents were not in a location that could be easily reached.  Plaintiffs' documents were in the back of the vehicle with their laundry, and they told the officers that they didn't have their identification cards with them.

116.  John Doe 16 then went back to his vehicle, and the ICE agent went to Calderón's window; he told Calderón to write down his name, date of birth, and Social Security number.  John Doe 17 then returned to the Plymouth Police Department car and waited outside the driver's door.

117.  Plaintiffs saw John Doe 17 giving John Doe 16 the sheet of paper with Calderón's information, and John Doe 16 started using the computer.  John Doe 17 sat in the passenger seat of the car, and John Doe 16 approached Calderón and asked him if there is anything in the vehicle that should "concern" him.

118.    Calderón, frustrated that this was his second time being stopped by the same Defendants, said no.

119.    John Doe 16 told Calderón that he was free to go.  No reason was ever stated for the stop nor was any citation or warning issued.

120.    The third incident occurred on or about Sunday, August 30, 2009, at 12:30 p.m. The Plaintiffs and their children were stopped as they were visiting numerous garage sales in the Plymouth area.

121.    At the beginning of the stop, as with the two previous stops, John Doe 17, who was sitting in the passenger seat of the Plymouth Police Department car, approached Calderón and asked for his license and car registration.  Calderón did not produce the requested documents, and John Doe 17 told Calderón to write down his name, date of birth, and Social Security number on a small white sheet of paper.

122.    Calderón complied and asked John Doe 17 the reason for the stop; John Doe 17 responded that it was "just a traffic stop."  Calderón again asked for the reason, and John Doe 17 responded the same.

123.    John Doe 17 returned to and entered the Plymouth Police Department car and John Doe 16 was on his computer.  Within two or three minutes, John Doe 16 approached Calderón's car and told him that he was free to leave.  No reason was ever stated for the stop nor was any citation or warning issued.

124.    In each of these stops Plaintiffs did not believe they were free to leave as the officers indicated that Plaintiffs were being investigated for unnamed purposes and at the end of the stop were told they were free to leave.

125.    Each of the stops of plaintiffs Belinda Vega and José Calderón and their two young children resulted in prolonged detention and exceeded the time to determine their driving status and issue any traffic citations.

**Plaintiff Alfonso Palafox**

126.    Plaintiff Alfonso Palafox was walking with his 4 year old son on the sidewalk of a residential street in Fremont, Ohio, on November 3, 2009, after picking up his son from Head Start.

127.    A U.S. Border Patrol vehicle came alongside him and a Border Patrol Agent in the vehicle asked Palafox if he knew the location of a particular street.

128.    The two Border Patrol Agents, John Does 2 and 3, then exited the vehicle and approached Palafox.   Palafox answered that he did not know the street.

129.    The Border Patrol Agents then asked Palafox where he was from, and then continued interrogating Palafox, asking him if he used drugs or knew anyone who sold drugs.  The Border Patrol Agents also asked Palafox if he knew of any more Hispanics in the area.  Palafox told them the Hispanics had all left the area.

130.    John Does 2 and 3 asked Palafox for his date of birth, phone number and address and told him to take care of his son.  One Agent also told him not to change his phone number so they could have business dealings later.  The Agents refused

him permission to take a picture of their vehicle and also asked if Palafox was working.

131.  Palafox did not believe he was free to leave during this interrogation because the Border Patrol Agents exited their vehicle and started interrogating him on the street rather than awaiting his response to their question from inside the Border Patrol vehicle.

### Plaintiff José Samuel Contreras García

132.  Plaintiff José Samuel Contreras García was traveling between Florida and Indiana as a passenger on a Greyhound bus on December 17, 2009.

133.  The bus stopped at the Toledo Greyhound bus station, 811 Jefferson Avenue, Toledo, Ohio, to load and unload passengers.

134.  The bus contained approximately fifty (50) passengers when it arrived at the station.

135.  When the bus stopped a number of passengers exited the bus.  A Border Patrol Agent, Defendant Ramiro Corona, then boarded the bus and asked the only three Hispanic-appearing persons remaining on the bus for their identity documents.

136.  Plaintiff José Samuel Contreras García was one of the three Hispanics Defendant Corona restrained and interrogated about their identity and immigration status. Defendants Corona and Mateo then arrested Plaintiff José Samuel Contreras García.

137.  None of the passengers on the bus who appeared white or African-American were restrained and interrogated about their identity or immigration status by

Defendants Corona and Mateo.  Their conduct was later approved by Defendant York who issued a Notice to Appear to Plaintiff Contreras García.

138.  Plaintiff did not believe he was free to leave during this encounter.

### Plaintiff Jesús Rodríguez-Pérez

139.  Plaintiff Jesús Rodríguez-Pérez was traveling between Kentucky and Toledo, Ohio, as a passenger on a Greyhound bus on December 29, 2009.

140.  The bus stopped at the Toledo Greyhound bus station, 811 Jefferson Avenue, Toledo, Ohio, to load and unload passengers.

141.  When the bus stopped a number of passengers exited the bus, including Plaintiff Jesús Rodríguez-Pérez.

142.  Approximately fifteen passengers exited the bus; Plaintiff Jesús Rodríguez-Pérez was about the tenth person in line exiting the bus.

143.  Defendant Border Patrol Agents Andre Dario and S. Wrisley were at the Toledo Greyhound station at the bus exit watching the fifteen passengers exit the bus.

144.  Defendants Dario and Wrisley approached the plaintiff and asked for his "papers," his "green card," an "ID," and then asked if he was "illegal."  The agents also asked the person who had come to pick up the plaintiff, a Hispanic female, if she was a U.S. citizen.

145.  Defendants Dario and Wrisley did not question any of the other passengers exiting the bus.  None of the other passengers exiting the bus were Hispanic.

146.  Plaintiff Jesús Rodríguez-Pérez was arrested by the agents and taken to the Border Patrol Station in Sandusky, Ohio.  The actions of Defendants Dario and

Wrisley were approved by Defendant David B. York when York issued a Notice to Appear to Plaintiff Rodríguez-Pérez.

147. Plaintiff Jesús Rodríguez-Pérez did not believe he was free to leave during his restraint and interrogation by Defendants.

## Plaintiff Immigrant Worker Project

148. The IWP was initiated in 1999 as a result of a study commissioned by the Ohio Catholic Rural Life Conference.  The IWP works with and organizes immigrants regarding, e.g., workplace rights, human and immigration rights, leadership training, Limited English Proficiency (LEP) rights and health care, advocacy and networking, cultural and pastoral celebrations, educational programs, and microenterprise.

149. IWP has members, or Hispanics who have worked with them, who have been restrained, interrogated, and sometimes arrested by local law enforcement authorities or Sandusky Station Border Patrol Agents because of their being Hispanic.   This illegal and unconstitutional behavior by the Defendants has deprived IWP members of the equal protection of the laws and has also made some fearful of travel and association in the Ohio communities in which they live.   The IWP has had to expend approximately fifty percent more time on detained cases since the opening of the Sandusky Border Patrol Station due to that Station's profiling of Hispanics.

150.    The IWP's activities and membership are focused on the Hispanic community. The IWP's members in northwest Ohio are especially likely to be subjected to the profiling activities of the Defendants.

151.    The IWP has been, and continues to be, harmed by Defendants' practices because those practices undermine IWP's organizational missions and divert IWP resources from the pursuit of other, related goals.

152.    The IWP staff and members believe and have witnessed the fear caused in the Hispanic community by the Defendants' pattern or practice of profiling Hispanics for restraint, interrogation, and possible arrest in northwest Ohio.

153.    Profiling has injured the IWP as profiling has made IWP's organizing and empowerment activities more difficult due to Hispanics' reluctance to attend activities and to come forward regarding violations of their rights.  Law enforcement activities based on profiling of Hispanics chills the rights of IWP's members and the entire Hispanic community without regard to immigration status.

154.    The IWP seeks only injunctive and declaratory relief from Defendants, as discussed below.

**Plaintiff Farm Labor Organizing Committee, AFL-CIO (FLOC)**

155.    FLOC was started in 1968 in Ohio in order to obtain collective bargaining agreements with agricultural processors and farmers.  Although not protected by the National Labor Relations Act, 29 U.S.C. 141 et seq., FLOC has sought to protect and enhance labor protections throughout its history by, among other

methods, negotiating three party collective bargaining agreements between the union, agricultural processors, and farmers.

156.    FLOC's immediate constituency is migrant workers in the agricultural industry, but FLOC is also involved with immigrant workers, Hispanics, local communities, and national and international coalitions concerned with justice. The FLOC vision emphasizes human rights as the standard and self-determination as the process for achieving these rights.  FLOC struggles for full justice for those who have been marginalized and exploited for the benefit of others, and works to change the structures of society to enable these people a direct voice in their own conditions.  FLOC has negotiated collective bargaining contracts for workers in both Ohio and North Carolina.

157.    FLOC's members, and Hispanics who have worked with FLOC, who have been restrained, interrogated, and sometimes arrested by local law enforcement authorities or Sandusky Station Border Patrol Agents because of their being Hispanic.  This illegal and unconstitutional behavior by the Defendants has deprived FLOC members of the equal protection of the laws and has also made some fearful of travel and association in the Ohio communities in which they live.

158.    FLOC's activities and membership are focused on the farmworker and Hispanic communities.  These constituencies are especially likely to be subjected to the profiling activities of the Defendants.  Indeed, most of the individual named plaintiffs were agricultural workers working in Northwest Ohio.

159.   FLOC has been, and continues to be, harmed by Defendants' practices because those practices injure FLOC's members, frustrate FLOC's organizational missions and divert FLOC resources from the pursuit of other, related goals.

160.   FLOC staff and members have witnessed the fear caused in the Hispanic and farmworker communities by the Defendants' pattern or practice of profiling Hispanics for restraint, interrogation, and possible arrest in northwest Ohio.

161.   Profiling has injured FLOC as it has made FLOC's organizing and empowerment activities more difficult due to farmworkers' and Hispanics' reluctance to attend activities and to come forward regarding violations of their rights.   Law enforcement activities based on profiling of Hispanics chills the rights of the farmworker and Hispanic communities without regard to immigration status.

162.   FLOC seeks only injunctive and declaratory relief from Defendants, as discussed below.

**Border Patrol Pattern Or Practice Of Profiling And Encouraging Local Law Enforcement Agencies To Profile**

163.   Upon information and belief, the Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and the John Doe Border Patrol Agents  1 – 9 of the Sandusky Border Patrol Station have held seminars, trainings, or otherwise communicated with local law enforcement agencies (LEA), including Defendant Attica, Norwalk, and Plymouth Police Departments, encouraging those LEAs to restrain and interrogate Hispanics about their immigration status and then call the Sandusky Border Patrol Station to request assistance if any of those

restrained and interrogated Hispanics appear to be without proper immigration documentation.

164. Upon information and belief the Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9 Border Patrol Agents of the Sandusky Border Patrol Station have not monitored the LEAs in those agencies' restraint and interrogation of Hispanics or have shown deliberate indifference to the restraint and interrogation of Hispanics by those LEAs, resulting in the restraint and interrogation of Hispanics by the LEAs without any reasonable belief that they have violated immigration laws of the United States.

165. Upon information and belief, the Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9 Border Patrol Agents of the Sandusky Border Patrol Station know or should know that their encouragement of the LEAs to restrain and interrogate Hispanics about their immigration status results in those Hispanics being deprived of the equal protection of the laws of the United States and is unconstitutional.

166. Upon information and belief, the Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9 Border Patrol Agents of the Sandusky Border Patrol Station know or should know that suppression of unlawfully obtained evidence is very difficult in Immigration Court hearings and thus believed that their illegal restraint and interrogation of Hispanics and their encouragement of LEAs to do the same would go unnoticed or unpunished.

167.  Upon information and belief, police officers of the Attica, Norwalk, and Plymouth, Ohio police departments have participated in seminars, trainings or otherwise communicated with Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9 of the Sandusky Border Patrol Station about restraining and interrogating Hispanics about their immigration status.

168.  These restraints and interrogations have been as a result of the class members' being Hispanic.

169.  Local law enforcement, the Sandusky Ohio County Sheriff's office, have had to respond to an inquiry about Agent Mateo of the Sandusky Ohio Border Patrol Station trespassing on private property allegedly assisting the Ohio State Highway Patrol in a marijuana eradication program.  Sandusky County Sheriff Overmyer had to order Agent Mateo and possibly another Agent to terminate their activities.  An incident report dated September 18, 2009, obtained by ABLE from the Sandusky County Sheriff's Department, through an Open Records Act request, states in relevant part:

> "This office received a complaint of a low flying airplane in the area of Cr. 260 & Cr. 183. The complainant stated that the airplane was circling the area for more than an hour and thought it was suspicious. Dispatch contacted Det. Capt. Consolo and asked if we were currently conducting any investigations using a low flying aircraft in that area. Dispatch was advised we were not. Det. Capt. Consolo & Det. Sgt. Meyer responded to the area to investigate the suspicious low flying aircraft. Upon arrival detectives located an US Boarder Patrol unit parked along the Cr. 260 roadway. Detectives Consolo spoke with boarder patrol agent Mateo and asked what was going on. The agent responded that they conducting a marijuana eradication

investigation with the State Highway Patrol aviation unit.
Det. Consolo asked agent Mateo under who's authority they
were operating under due to neither having the authority or
jurisdiction to conduct such an investigation on private
property. After speaking with agent Mateo for sometime he
then refused to cooperate or answer anymore questions
concerning the matter and called his supervisor. Sheriff
Overmyer was contacted and responded to the scene. After
speaking with the Boarder Patrol agents Sheriff Overmyer
advised them that since they nor the State Highway Patrol
have any authority or jurisdiction to conduct such an
investigation on private property it was to be
terminated immediately. Report Filed. Det. Capt. James M.
Consolo"

170.   The Border Patrol Agents at the Sandusky Ohio Border Patrol Station do not

       have adequate training regarding their duties and the manner in which they

       must be carried out consistent with the United States Constitution.

171.   The Border Patrol Agents at the Sandusky Ohio Border Patrol Station do not

       have enough work preventing the "illegal entry of aliens into the United States,"

       8 U.S.C. § 1377(a)(3), across the Canada-U.S. border and have instead been given

       permission to engage in the restraint and interrogation of Hispanics and other

       activities unrelated to preventing illegal entries into the U.S.

172.   The Attica, Norwalk, and Plymouth police departments have official policies or a

       pattern or practice of restraining and interrogating Hispanics about their

       immigration status.

173.   These official policies or a pattern or practice of restraining and interrogating

       Hispanics about their immigration status have been encouraged by Defendants

       Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley,  and John Does 1 - 9

       Sandusky Station Border Patrol Agents.

174. Defendants have shown a deliberate indifference to the Plaintiffs' right to equal protection under the laws of the United States.

175. The Defendants Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 - 9 Sandusky Station Border Patrol Agents have conspired to deprive Hispanics in Ohio of the equal protection of the laws by restraining and interrogating them about their immigration status solely based on their being Hispanic

176. The Defendants Attica, Briggs, Attica Police Chief, and John Does 10 - 12 Attica Ohio Police Department officers have conspired with the Sandusky Border Patrol Station defendants to deprive Hispanics in Ohio of the equal protection of the laws by restraining and interrogating them about their immigration status solely based on their being Hispanic.

177. The Defendants Norwalk, Light, and John Does 13 - 15 of the Norwalk Ohio Police Department have conspired with the Sandusky Border Patrol Station defendants to deprive Hispanics in Ohio of the equal protection of the laws by restraining and interrogating them about their immigration status solely based on their being Hispanic.

178. The Defendants Plymouth, Doan and John Doe 16 of the Plymouth Ohio Police Department have conspired with the Sandusky Border Patrol Station defendants to deprive Hispanics in Ohio of the equal protection of the laws by restraining and interrogating them about their immigration status solely based on their being Hispanic.

179.   Defendant Randy L. Gallegos, the Chief Border Patrol Agent, Detroit Sector, has actual knowledge of the profiling of Hispanics by Sandusky Ohio Border Patrol Station Agents as a result of his supervision of those offices, statistics gathered by that office and reported to him, and his and their communication with local law enforcement agencies regarding the enforcement of the civil provisions of federal immigration law.

180.   Defendant Gallegos had the authority to stop the profiling by his Agents and the authority to stop his Agents from encouraging and participating in profiling by local law enforcement agencies.  He neglected or refused to prevent the profiling.

181.   Defendant Border Patrol, a subagency within Customs and Border Protection, U.S. Department of Homeland Security, has the responsibility to see that its responsibilities and duties under the Immigration and Nationality Act and the United States Constitution are carried out and has failed in those duties and responsibilities to comply with the law.

### CLASS ACTION ALLEGATIONS

182.   Plaintiffs bring this class action on behalf of themselves and all others similarly situated.  The proposed Classes are defined as follows:

Class 1:  All Hispanics who have been or will be restrained and interrogated on or after January 1, 2009, by Border Patrol Agents stationed at the Sandusky Border Patrol station.

Class 2:  All Hispanics who have been or will be restrained and interrogated on or after January 1, 2009, by officers of the Attica, Norwalk, or Plymouth police departments.

183.    Plaintiffs and members of the Classes bring this action for equitable, declaratory, and injunctive relief pursuant to subdivision (b)(2) of Rule 23 of the Federal rules of Civil Procedure.

184.    Plaintiffs are informed and believe and based thereon allege that members of the Class are so numerous that individual joinder of all of their members would be impracticable.  Joinder is also impracticable because the Hispanic population of the counties in the area of the Sandusky Border Patrol Station undergoes considerable change as one of the busiest agricultural areas for migrant farm workers in Ohio, because many class members are unaware of their rights, and, because class members' access to legal services and representation is hampered by language, cultural, and economic barriers.

185.    There were approximately 282,603 Hispanics residing in the State of Ohio in 2007, the latest date for which demographic data is available.  Of these residents, Erie County has 1,896, Huron County has 3,064, Ottawa County has 1,685, Sandusky County has 4,698, and Lucas County has 23,168.  Additionally, Hispanic residents of counties in the Eastern Division number 16,184 in Lorain County and 52,960 in Cuyahoga County. http://pewhispanic.org/states/?stateid=OH.  Hispanic residents of Lorain and

Cuyahoga Counties frequently travel to or through counties in the Western Division of the Northern District.

186. There are tens of thousands of Hispanics within the Western Division of the Northern District of Ohio who could encounter profiling by various Defendants. There are also thousands of Hispanics who reside in close proximity to the Western Division of the Northern District of Ohio who are subject to profiling while traveling through or to the counties within the Western Division of the Northern District.

187. There are many questions of law and fact common to the representative Plaintiffs and the members of the Class, including the following:

a. The legality of the restraint, interrogation, and arrest of Plaintiffs and members of the classes based on their being Hispanic.

b. The existence of the policy or pattern and practice of the Sandusky Station of the U.S. Border Patrol to restrain, interrogate, and arrest Plaintiffs and members of the Classes based on their being Hispanic.

c. The existence of the policy or pattern and practice of the Sandusky Station of the U.S. Border Patrol to encourage local law enforcement agencies and their officers to restrain, interrogate, and arrest Plaintiffs and members of the Classes based on their being Hispanic.

d. The existence of the policies or patterns and practices of Attica, Norwalk, Plymouth, and the Attica, Norwalk, and Plymouth Police Departments

to restrain, interrogate, and arrest Plaintiffs and members of the Classes based on their being Hispanic.

e.      The failure of any of the Defendants to stop the policy or pattern and practice of restraining, interrogating, and arresting Plaintiffs and members of the Classes based on their being Hispanic.

188.    The organizational Plaintiffs, IWP and FLOC, have memberships that are wholly or primarily Hispanic.  Their members have been subjected to profiling by the Defendants.

189.    The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs have been subjected to or threatened with policies or practices that are identical or substantially similar to the policies and practices to which the class members have been subjected or with which the members of the Class have been threatened.

190.    The named Plaintiffs will fairly and adequately protect the interests of the class. There is no conflict between the Plaintiffs and other class members.  Moreover, Plaintiffs have retained counsel who are experienced in class action litigation and can adequately represent the interests of the class members as well as those of the named Plaintiffs.

191.    Defendants have acted on grounds generally applicable to both the named Plaintiffs and other class members, making appropriate final declaratory and injunctive relief with respect to the members of the Class.  The injuries suffered by the named Plaintiffs and other class members as a result of Defendants'

actions are capable of repetition yet may evade review, thereby making individual and class relief appropriate.

## FIRST CLAIM FOR RELIEF

**Fourth Amendment and 8 U.S.C. § 1357 (Bivens and 5 U.S.C. § 702)**

**Unreasonable Searches and Seizures**

**Individual plaintiffs Palafox, Contreras García, and Rodríguez-Pérez, the IWP and FLOC, and and Class 1 class members against defendants Border Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9**

192. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

193. Individual plaintiffs Palafox, Contreras García, and Rodríguez-Pérez, the IWP, FLOC, and Class 1 members seek injunctive and declaratory relief against the above-described policies, practices and conduct of Defendants Border Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs, their members, and Class 1 members to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

   a.  Stopping persons and vehicles without reasonable suspicion of criminal activity or of their being noncitizens present in the U.S. without authorization;

b.      Restraining and interrogating persons based solely on their being Hispanic;

b.      Conducting personal and vehicle searches without probable cause to believe that the areas searched contain evidence of criminal activity or a reasonable belief that the person search or car's occupants are dangerous and may gain access to a weapon in the area searched;

c.      Unreasonably arresting individuals without warrants and without probable cause to believe they are noncitizens present in violation of civil immigration laws; and,

d.      Unreasonably arresting individuals for suspected civil immigration violations without warrants and without reason to believe they are likely to escape before a warrant can be obtained.

194.    Plaintiff Alfonso Palafox seeks compensatory and punitive damages against Defendants Gallegos and unknown John Does in their personal capacities for violations of his right to be free from unreasonable seizure, including seizing (restraining) him based on his being Hispanic and then interrogating him.

195.    Plaintiff José Samuel Contreras García seeks compensatory and punitive damages against Defendants Gallegos, Corona, Simon, York, and unknown John Does in their personal capacities for violations of his right to be free from unreasonable searches and seizures , including but not limited to, detaining, interrogating, and arresting him without reasonable suspicion of criminal activity or that he was a noncitizen present in the United States without

authorization, these actions by Defendants at a bus station being based solely on his being Hispanic.

196. Plaintiff Jesús Rodríguez-Pérez seeks compensatory and punitive damages against Defendants Gallegos, Dario, Wrisley, York, and unknown John Does in their personal capacities for violations of his right to be free from unreasonable searches and seizures , including but not limited to, detaining, interrogating, and arresting him without reasonable suspicion of criminal activity or that he was a noncitizen present in the United States without authorization, these actions by Defendants at a bus station being based solely on his being Hispanic.

## SECOND CLAIM FOR RELIEF

### Fifth Amendment, 8 U.S.C. §1357, 8 C.F.R. § 287.3

### Bivens and 5 U.S.C. § 702

### Due Process

**Individual plaintiffs Palafox, Contreras García, and Rodríguez-Pérez, the IWP and FLOC, and Class 1 class members against defendants Border Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9**

197. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

198. A federal agency's failure to follow its own governing statutes and regulations violates due process guaranteed by the Fifth Amendment of the United States Constitution.

199. Plaintiffs Palafox, Contreras García, Rodríguez-Pérez, the IWP, FLOC, and Class 1 class members seek injunctive and declaratory relief against Defendants Border

Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, Dario, and John Does 1 – 9 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to due process under the Fifth Amendment of the United States Constitution, including but not limited to:

    a.    Violating 8 U.S.C. § 1357 by profiling Hispanics for restraint and interrogation about their immigration status based solely on their being Hispanic and without a reasonable belief that they are noncitizens or aliens without the right to be or to remain in the United States; and,

    b.  Violating the terms of 8 U.S.C. § 1357 and 8 C.F.R. § 287.3 and its authorizing statutes by failing to provide procedural protections required for persons arrested without a warrant for civil immigration violations.

200.    Plaintiffs José Samuel Contreras García and Jesús Rodríguez-Pérez seek compensatory and punitive damages against Defendants Gallegos, Corona, Mateo, Simon, Dario, Wrisley, York, and unknown John Does in their personal capacities for violations of their right to due process under the Fifth Amendment of the United States Constitution, including but not limited to, detaining, interrogating, and arresting them without reasonable suspicion of criminal activity or that they were noncitizens present in the United States without authorization, these actions by Defendants at a bus station being based solely on their being Hispanic.

## THIRD CLAIM FOR RELIEF

### Fifth Amendment, 8 U.S.C. §1357, 8 C.F.R. § 287.3

### Bivens and 5 U.S.C. § 702

### Equal Protection

**Individual plaintiffs Palafox, Contreras García, and Rodríguez-Pérez, the IWP, FLOC, and Class 1 class members against defendants Border Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, and John Does 1 – 9**

201.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

202.    As Hispanics, the individual Plaintiffs and members of Class 1 are members of a protected class.

203.    Plaintiffs Palafox, Contreras García, Rodríguez-Pérez, the IWP, FLOC, and Class 1 class members seek injunctive and declaratory relief against Defendants Border Patrol, Gallegos, Corona, Dario, Mateo, Simon, York, Wrisley, Dario, and John Does 1 – 9 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to be free from discrimination on the basis of race, ethnicity, or national origin, including but not limited to:

a.   Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic; and,

b.     Using race as a motivating factor to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status.

204.    Plaintiffs José Samuel Contreras García and Jesús Rodríguez-Pérez seek compensatory and punitive damages against Defendants Gallegos, Corona, Simon, Dario, Wrisley, York, and unknown John Does in their personal capacities for violations of their right to be free from discrimination on the basis of race, ethnicity, or national origin, including but not limited to:

a.    Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic; and,

b.    Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status.

### FOURTH CLAIM FOR RELIEF

**Fourth Amendment (42 U.S.C. § 1983)**

**Unreasonable Search and Seizure**

**42 U.S.C. § 1983 Claims for Violation of the Fourth Amendment Prohibition Against**

**Unreasonable Searches and Seizures**

**Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, and Class 2 class members against defendants Attica, Briggs, Attica Ohio Police Chief and John Does 10 - 12**

205.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

206.    Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Attica, Police Chief of Attica

Ohio Police Department and John Does 10 - 12  in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

a.      Stopping person and vehicles without reasonable suspicion of criminal activity or traffic infraction;

b.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic; and,

c.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status.

207.    Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz seek compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Briggs and John Does 10 - 12  in their personal capacities for violations of their rights to be free from unreasonable searches and seizures , including but not limited to:

a.      Stopping persons and vehicles without reasonable suspicion of criminal activity or traffic infraction;

b.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

c.      Using race as a motivating factor in deciding to unreasonably prolong

detentions in order to question persons regarding their citizenship and

immigration status; and,

d.      Engaging in the enforcement of the civil provisions of federal immigration

law.

## FIFTH CLAIM FOR RELIEF

### Fourth Amendment (42 U.S.C. § 1983)

### Unreasonable Search and Seizure

### 42 U.S.C. § 1983 Claims for Violation of the Fourth Amendment Prohibition Against

### Unreasonable Searches and Seizures

**Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class members against defendants Norwalk,  Light, and John Does 13 - 15**

208.    Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class

members seek injunctive and declaratory relief against Defendants Norwalk,

Light, and  John Does 13 - 15  in their official capacities, enjoining them from

continuing to engage in the above-described policies, practices and conduct

violating the rights of Plaintiffs to be free from unreasonable searches and

seizures under the Fourth Amendment of the United States Constitution,

including but not limited to:

a.      Stopping persons and vehicles without reasonable suspicion of criminal

activity or traffic infraction;

b.      Using race as a motivating factor to stop, detain, interrogate and/or

search persons who are Hispanic;

c.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status; and,

d.      Engaging in the enforcement of the civil provisions of federal immigration law.

209.    Plaintiff María de Belén Martínez-Castro seeks compensatory damages against Defendant Norwalk and compensatory and punitive damages against Light and John Does 13 - 15  in their personal capacities for violations of her right to be free from unreasonable searches and seizures , including but not limited to:

a.      Stopping her without reasonable suspicion of criminal activity or traffic infraction;

b.      Using race as a motivating factor to stop, detain, interrogate and/or search her because she is Hispanic;

c.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question her regarding her citizenship and immigration status.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**Fourth Amendment (42 U.S.C. § 1983)**

**Unreasonable Search and Seizure**

**42 U.S.C. § 1983 Claims for Violation of the Fourth Amendment Prohibition Against Unreasonable Searches and Seizures**

**Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members against defendants Plymouth, Doan and John Does 16 - 17**

210. Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Plymouth, Doan, and John Does 16 - 17 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to be free from unreasonable searches and seizures under the Fourth Amendment of the United States Constitution, including but not limited to:

a. Stopping persons and vehicles without reasonable suspicion of criminal activity or traffic infraction;

b. Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

c. Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status; and,

d. Engaging in the enforcement of the civil provisions of federal immigration law.

211. Plaintiff Belinda Vega and José Calderón seek compensatory damages against Defendant Plymouth and compensatory and punitive damages against Defendants Doan and John Does 16 - 17 in their personal capacities for violations

of her right to be free from unreasonable searches and seizures , including but not limited to:

a.       Detaining them without reasonable suspicion of criminal activity; and,

b.       Unreasonably prolonging their detention beyond the time they would otherwise take to question them about matters unrelated to the purported purpose of the stop, specifically their citizenship and immigration status.

<u>SEVENTH CLAIM FOR RELIEF</u>

**Fourteenth Amendment (42 U.S.C. § 1983)**

**Equal Protection**

**Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members against defendants Attica, Briggs, Attica Ohio Police Chief and John Does 10 - 12**

212.     Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

213.     Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Attica, Police Chief of Attica Ohio Police Department, and John Does 10 – 12 in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to be free from discrimination on the basis of race, ethnicity, or national origin, including but not limited to:

a.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.      Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

214.    Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz seek compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Briggs and John Does 10 - 12  in their personal capacities for violations of their rights to be free from discrimination on the basis of race, ethnicity, or national origin, , including but not limited to:

a.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.      Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

## EIGHTH CLAIM FOR RELIEF

### Fourteenth Amendment (42 U.S.C. § 1983)

### Equal Protection

**Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class members against defendants Norwalk, Light and John Does 13 - 15**

215.    Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class

members seek injunctive and declaratory relief against Defendants Norwalk,

Light, and John Does 13 - 15  in their official capacities, enjoining them from

continuing to engage in the above-described policies, practices and conduct

violating the rights of Plaintiffs to be free from discrimination on the basis of

race, ethnicity, or national origin, including but not limited to:

a.    Using race as a motivating factor to stop, detain, interrogate and/or

search persons who are Hispanic;

b.    Using race as a motivating factor in deciding to unreasonably prolong

detentions in order to question persons regarding their citizenship and

immigration status;

c.    Using race as a motivating factor in deciding to contact Border Patrol

Agents or Immigration and Customs Enforcement (ICE) agents regarding the

immigration status of persons.

216.    Plaintiff María de Belén Martínez-Castro seeks compensatory damages against

Defendant Norwalk and compensatory and punitive damages against

Defendants Light and John Does 13 - 15  in their personal capacities for violations

of her right to be free from discrimination on the basis of race, ethnicity, or national origin, , including but not limited to:

a.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who appear to be Hispanic;

b.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.      Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

## NINTH CLAIM FOR RELIEF

### Fourteenth Amendment (42 U.S.C. § 1983)

### Equal Protection

**Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members against defendants Plymouth, Doan, and John Does 16 - 17**

217.    Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Plymouth, Doan, and  John Does 16 - 17  in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to be free from discrimination on the basis of race, ethnicity, or national origin, including but not limited to:

a.    Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.    Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.    Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

218.  Plaintiff Belinda Vega and José Calderón seek compensatory damages against Defendant Plymouth and compensatory and punitive damages against Defendants Doan and John Does 16 - 17 in their personal capacities for violations of their right to be free from discrimination on the basis of race, ethnicity, or national origin, , including but not limited to:

a.    Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.    Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.    Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

## TENTH CLAIM FOR RELIEF

### Fourteenth Amendment (42 U.S.C. § 1983)

### Due Process

**Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members against defendants Attica, Briggs, Attica Ohio Police Chief and John Does 10 - 12**

219.   Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

220.   Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Attica, Police Chief of Attica Ohio Police Department, and John Does 10 - 12  in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to due process under the Fourteenth Amendment of the United States Constitution, including but not limited to:

a.   Restraining and interrogating individuals without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of the persons' rights to substantive due process; and,

b.   Aiding and abetting Defendant Border Patrol Agents in deying procedural protections due civil immigration arrestees who are arrested without a warrant.

221.   Plaintiffs Nieto, Muniz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz seek compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Briggs and John Does 10 - 12  in their personal capacities for violations of their rights to due process, , including but not limited to:

a.   Restraining and interrogating them without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of their rights to substantive due process; and,

b.   Aiding and abetting Defendant Border Patrol Agents in deying procedural protections due civil immigration arrestees who are arrested without a warrant.

## ELEVENTH CLAIM FOR RELIEF

### Fourteenth Amendment (42 U.S.C. § 1983)

### Due Process

**Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class members against defendants Norwalk, Light and John Does 13 - 15)**

222.   Plaintiffs María de Belén Martínez-Castro, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Norwalk, Light, and John Does 13 - 15  in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct violating the rights of Plaintiffs to due process under the Fourteenth Amendment of the United States Constitution, including but not limited to:

a.   Restraining and interrogating individuals without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of the persons' rights to substantive due process; and,

b.   Aiding and abetting Defendant Border Patrol Agents in deying procedural protections due civil immigration arrestees who are arrested without a warrant.

223.   Plaintiff María de Belén Martínez-Castro seeks compensatory damages against Defendant Norwalk and compensatory and punitive damages against Defendants Light and John Does 13 - 15  in their personal capacities for violations of her right to due process, , including but not limited to:

a.   Restraining and interrogating her without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of her rights to substantive due process.

### TWELTH CLAIM FOR RELIEF

**Fourteenth Amendment (42 U.S.C. § 1983)**

**Due Process**

**Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members against defendants Plymouth, Doan, and John Does 16 - 17**

224.   Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Plymouth, Doan, and  John Does 16 - 17  in their official capacities, enjoining them from continuing to engage in the above-described policies, practices and conduct

violating the rights of Plaintiffs to due process under the Fourteenth Amendment of the United States Constitution, including but not limited to:

a.   Restraining and interrogating individuals without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of the persons' rights to substantive due process; and,

b.   Aiding and abetting Defendant Border Patrol Agents in deying procedural protections due civil immigration arrestees who are arrested without a warrant.

225.   Plaintiff Belinda Vega and José Calderón seek compensatory damages against Defendant Plymouth and compensatory and punitive damages against Defendants Doan and John Does 16 - 17  in their personal capacities for violations of their right to due process, , including but not limited to:

a.   Restraining and interrogating individuals without probable cause of criminal activity and for civil immigration violations without any lawful authority, in violation of their rights to substantive due process.

## THIRTEENTH CLAIM

### 42 U.S.C. § 1983, 42 U.S.C. § 1985(3)

### Conspiracy

**Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members against defendants Attica, Briggs, Attica Police Chief, Gallegos, John Does 1 – 9, and John Does 10 - 12**

226.  Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

227.  Defendants Attica, Briggs, Attica Police Chief, and John Does 10 – 12 conspired with Gallegos and John Does 1 – 9 by entering into a mutual understanding and agreement and committing overt acts in furtherance of their agreement to violate Plaintiffs' constitutional and statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. § 1985(3), , including but not limited to the following:

a.  Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.  Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.  Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

228.  As a direct and proximate cause of the aforementioned conspiracy between Defendants through individual actions and policies and practices, Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz have been deprived of their rights to be free from unreasonable and unlawful searches and seizures, to equal protections under the laws, and to

substantive and procedural due process rights, as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

229.   Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Attica, Attica Police Chief, Gallegos, John Does 1 – 9, and John Does 10 – 12 in their official capacities, enjoining them from continuing to engage in the above-described conspiracy to violate the constitutional and statutory rights of Plaintiffs.

230.   Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz seeks compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Briggs, John Does 10 – 12, Gallegos, and John Does 1 – 9 for conspiring to violate their constitutional and statutory rights , including but not limited to:

a.  Agreeing to and intentionally subjecting them to discriminatory treatment on the basis of their race, ethnicity, or national origin;

b.      Agreeing to and intentionally subjecting them to unreasonable searches and seizures; and,

c.      Agreeing to and intentionally denying them substantive and procedural due process.

**FOURTEENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983, 42 U.S.C. § 1985(3)**

**Conspiracy**

**Plaintiff Martinez, the IWP, FLOC, and Class 2 class members against Defendants Norwalk, Light, Gallegos, John Does 1 – 9, and John Does 13 - 15**

231.  Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

232.  Defendants Norwalk, Light, and John Does 13 - 15 conspired with Gallegos and John Does 1 – 9 by entering into a mutual understanding and agreement and committing overt acts in furtherance of their agreement to violate Plaintiffs' constitutional and statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. § 1985(3), , including but not limited to the following:

a.  Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.  Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.  Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

233.  As a direct and proximate cause of the aforementioned conspiracy between Defendants through individual actions and policies and practices, Plaintiff Martinez has been deprived of her right to be free from unreasonable and unlawful searches and seizures, to equal protections under the laws, and to

substantive and procedural due process rights, as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

234.   Plaintiffs Martinez, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Norwalk, Light, Gallegos, John Does 1 – 9, and John Does 13 - 15 in their official capacities, enjoining them from continuing to engage in the above-described conspiracy to violate the constitutional and statutory rights of Plaintiffs.

235.   Plaintiff Martinez seeks compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Light, John Does 13 - 15, Gallegos, and John Does 1 – 9 for conspiring to violate her constitutional and statutory rights , including but not limited to:

a.   Agreeing to and intentionally subjecting her to discriminatory treatment on the basis of her race, ethnicity, or national origin;

b.   Agreeing to and intentionally subjecting her to unreasonable searches and seizures; and,

c.   Agreeing to and intentionally denying her substantive and procedural due process.

### FIFTEENTH CLAIM FOR RELIEF

**42 U.S.C. § 1983, 42 U.S.C. § 1985(3)**

**Conspiracy**

**Plaintiffs Belinda Vega, José Calderón, the IWP, FLOC, and Class 2 class members against Defendants Plymouth, Doan, Gallegos, John Does 1 – 9, and John Does 16 - 17**

236.    Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

237.    Defendants Plymouth, Doan, and John Does 16 - 17 conspired with Gallegos and John Does 1 – 9 by entering into a mutual understanding and agreement and committing overt acts in furtherance of their agreement to violate Plaintiffs' constitutional and statutory rights, including their right to equal protection under law, in violation of 42 U.S.C. § 1985(3), , including but not limited to the following:

a.      Using race as a motivating factor to stop, detain, interrogate and/or search persons who are Hispanic;

b.      Using race as a motivating factor in deciding to unreasonably prolong detentions in order to question persons regarding their citizenship and immigration status;

c.      Using race as a motivating factor in deciding to contact Border Patrol Agents or Immigration and Customs Enforcement (ICE) agents regarding the immigration status of persons.

238.    As a direct and proximate cause of the aforementioned conspiracy between Defendants through individual actions and policies and practices, Plaintiffs Vega and Calderón have been deprived of their rights to be free from unreasonable and unlawful searches and seizures, to equal protections under the laws, and to substantive and procedural due process rights, as secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

239. Plaintiffs Vega, Calderón, the IWP, FLOC, and Class 2 class members seek injunctive and declaratory relief against Defendants Plymouth, Doan, Gallegos, John Does 1 – 9, and John Does 16 - 17 in their official capacities, enjoining them from continuing to engage in the above-described conspiracy to violate the constitutional and statutory rights of Plaintiffs.

240. Plaintiff Vega and Calderón seek compensatory damages against Defendant Plymouth and compensatory and punitive damages against Defendants Doan, John Doe 16, Gallegos, and John Does 1 – 9 for conspiring to violate their constitutional and statutory rights , including but not limited to:

a.  Agreeing to and intentionally subjecting them to discriminatory treatment on the basis of their race, ethnicity, or national origin;

b.  Agreeing to and intentionally subjecting them to unreasonable searches and seizures; and,

c.  Agreeing to and intentionally denying their substantive and procedural due process.

<u>**SIXTEENTH CLAIM FOR RELIEF**</u>

**42 U.S.C. § 1986**

**Failure to Stop Conspiracy to Violate Hispanics Right to Equal Protection of the Law**

**Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz, against Defendants Attica, Attica Police Chief, Gallegos, John Does 1 – 9, and John Does 10 - 12**

241. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

242.  Plaintiffs Nieto, Muñiz, Torres-Franco, Muñiz-Torres, María Muñiz-Muñiz, Luis Enrique Muñiz-Muñiz seeks compensatory damages against Defendant Attica and compensatory and punitive damages against Defendants Attica Police Chief, John Does 10 – 12, Gallegos, and John Does 1 – 9 for failing to stop the conspiracy to violate their constitutional and statutory rights , including but not limited to:

a.  Agreeing to and intentionally subjecting them to discriminatory treatment on the basis of their race, ethnicity, or national origin;

b.  Agreeing to and intentionally subjecting them to unreasonable searches and seizures; and,

c.  Agreeing to and intentionally denying them substantive and procedural due process.

## SEVENTEENTH CLAIM FOR RELIEF

**42 U.S.C. § 1986 Claim for Failure to Stop Conspiracy to Violate Hispanics Right to Equal Protection of the Law**

**Plaintiff Martinez against Defendants Norwalk, Light, Gallegos, John Does 1 – 9, and John Does 13 - 15**

243.  Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

244.  Plaintiff Martinez seeks compensatory damages against Defendant Norwalk and compensatory and punitive damages against Defendants Light, John Does 13 - 15, Gallegos, and John Does 1 – 9 for failing to stop the conspiracy to violate her constitutional and statutory rights , including but not limited to:

a. Agreeing to and intentionally subjecting her to discriminatory treatment on the basis of her race, ethnicity, or national origin;

b. Agreeing to and intentionally subjecting her to unreasonable searches and seizures; and,

c. Agreeing to and intentionally denying her substantive and procedural due process.

## EIGHTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1986 Claim for Failure to Stop Conspiracy to Violate Hispanics Right to

### Equal Protection of the Law

**Plaintiffs Belinda Vega and José Calderón against Defendants Plymouth, Doan, Gallegos, John Does 1 – 9, and John Does 16 - 17**

245. Plaintiffs incorporate by reference the allegations in the paragraphs above as though fully set forth here.

246. Plaintiffs Vega and Calderón seek compensatory damages against Defendant Plymouth and compensatory and punitive damages against Defendants Doan, John Does 16 - 17, Gallegos, and John Does 1 – 9 for failing to stop the conspiracy to violate their constitutional and statutory rights , including but not limited to:

a. Agreeing to and intentionally subjecting them to discriminatory treatment on the basis of their race, ethnicity, or national origin;

b. Agreeing to and intentionally subjecting them to unreasonable searches and seizures; and,

c.     Agreeing to and intentionally denying their substantive and procedural due process.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.  Issue an order certifying this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

b.  Appoint the undersigned as class counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

c.  Issue a judgment declaring that Defendants' policies, practices, acts, and omissions described herein violate Plaintiffs' rights under the Constitution of the United States, and federal statutory law;

d.  Permanently enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them from subjecting Plaintiffs to the unconstitutional and illegal conditions described herein and consistent with the relief requested in the individual Claims, and issue injunctive relief sufficient to rectify those conditions;

e.  An order allowing monitoring of the actions of the Sandusky Border Patrol Station by provision of redacted records of questioning, restraint of, interrogation of, and arrest of Hispanics and all others by that Station.  These forms would include, but not be limited to, the I-213, I-862, and other documents and incident reports prepared by Sandusky Border Patrol Agents.

f.  Grant Plaintiffs their reasonable attorney fees and costs pursuant to the Equal

Access to Justice Act, 42 U.S.C. § 1988, and other applicable law.

g.  Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Mark Heller_____
     Mark Heller (0027027)
     /s/ Eugenio Mollo, Jr.
     Eugenio Mollo, Jr. (0081860)
     /s/Aneel L. Chablani
     Aneel L. Chablani (0083043)
     ADVOCATES FOR BASIC LEGAL EQUALITY, INC.
     525 Jefferson Ave., Suite 300
     Toledo, OH  43604
     419.255.0814  (phone)
     419.259.2880  (fax)
     mheller@ablelaw.org
     emollo@ablelaw.org
     achablani@ablelaw.org

     /s/John T. Murray
     John T. Murray (0008793)
     /s/Leslie O. Murray
     Leslie O. Murray (0081496)
     MURRAY & MURRAY CO., L.P.A.
     111 East Shoreline Drive
     Sandusky, OH 44870-2517
     419.987.4067  (phone)
     419.624.0707  (fax)
     jotm@murrayandmurray.com
     lom@murrayandmurray.com

     Counsel for Plaintiffs