IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Maria Muniz-Muniz, et al.,                              Case No. 3:09 CV 2865

                                    Plaintiffs,         MEMORANDUM OPINION
                                                        AND ORDER
            -vs-
                                                        JUDGE JACK ZOUHARY
United States Border Patrol,
Customs and Border Protection,
Department of Homeland Security, et al.,

                                    Defendants.


## INTRODUCTION

Plaintiffs in this case seek injunctive and declaratory relief for what they contend is a pattern and practice of unconstitutional racial profiling by United States Border Patrol agents assigned to the Sandusky Bay Station in Ohio. Specifically, Plaintiffs bring their claims against the Federal Defendants under the Fourth and Fifth Amendments to the U.S. Constitution, as well as under multiple civil rights statutes. Pending before this Court is the Federal Defendants' Motion to Dismiss and/or in the Alternative Motion for Summary Judgment (Doc. 170).

According to the Federal Defendants, this Court lacks subject-matter jurisdiction to consider Plaintiffs' claims and should therefore dismiss this case under Federal Civil Rule 12(b)(1) (Doc. 170 at 15–47). Alternatively, the Federal Defendants assert there is no genuine issue as to any material fact regarding Plaintiffs' constitutional claims, entitling them to judgment as a matter of law under Federal Civil Rule 56(a) (Doc. 170 at 47–48). The matter has been fully briefed (Docs. 170, 187 & 191).

## BACKGROUND

The United States Border Patrol is primarily responsible for patrolling international border areas between Ports-of-Entry, including the 158-mile stretch between Ohio and Canada (Docs. 62-1 at 2; 181 at 7 & 17).  The Border Patrol's objectives include apprehending terrorists and weapons illegally entering the United States, deterring illegal entry, reducing crime in border communities, and identifying individuals in the United States without proper papers (Docs. 181 at 21; 185 at 16–17). The Border Patrol station pertinent to this case is the Sandusky Bay Station ("SBY"), which opened in February 2009 (Doc. 62-1 at 2).  This station is accountable for carrying out Border Patrol day-to-day duties and responsibilities, including planning and conducting operations in Ohio.

In November 2010, the Border Patrol created a Primary Operational Domain ("POD") for SBY, which is "the area within a Sector's geographically delineated area of operational responsibility where stations routinely plan for and conduct daily operations which directly support the Sector's primary enforcement efforts" (Docs. 181 at 17; 170-3 at 1).  In other words, the POD is where a station sends its routine, daily patrols; for SBY, this stretches from Lucas County to Cuyahoga County (Docs. 170-3 at 1; 181 at 17 & 33–34).

Plaintiffs argue the Border Patrol "has strayed far from its stated mission of protecting the country's northern border from 'transnational threats'" (Doc. 187 at 7).  According to Plaintiffs, SBY agents use Hispanic appearance to initiate enforcement action.  Plaintiffs note that in the three years SBY has been open, between 61.8% and 85.6% of those apprehended have been Hispanic (Doc. 187 at 7), with "an alarming use of racial slurs" by agents in official Border Patrol correspondence; and the two highest ranking SBY agents are unable to "consistently articulate race-neutral basis for stopping and detaining suspected unauthorized aliens" (Doc. 187 at 7).  The heart of Plaintiffs' theory

2

in this case is that "SBY patrols the area for suspicious persons with a deliberate focus on Hispanic persons as is demonstrated both by its organizational culture of utilizing dehumanizing language when describing Hispanic persons and . . . by the disparate impact experienced by Hispanic persons in Ohio" (Doc. 187 at 9).

Plaintiffs filed suit in December 2009, alleging racial profiling by the Border Patrol, individual Border Patrol agents, the Village of Attica, the City of Norwalk, the Village of Plymouth, and local law enforcement officers (Doc. 1). The Complaint was brought as a class action representing individuals, the Ohio Immigrant Worker Project ("IWP"), and the Farm Labor Organizing Committee ("FLOC"). Despite having filed suit as a class action, and completed months of discovery, Plaintiffs did not move for class certification under Federal Civil Rule 23.

In July 2010, the Federal Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 62). Plaintiffs opposed the Motion and requested discovery be permitted under Federal Civil Rule 56(d) (Doc. 68). This Court questioned whether it had subject-matter jurisdiction over Plaintiffs' claims for declaratory and injunctive relief, but denied the Federal Defendants' Motions without prejudice to permit discovery (Doc. 76).

In late April 2012, following a long period of discovery, Plaintiffs filed a Second Amended Complaint, adding factual allegations against the Federal Defendants and naming two additional Border Patrol agents in their official capacities (Doc. 143). Plaintiffs also dropped their request for money damages and all claims against Federal Defendants in their personal capacities. Because all claims against the Local Defendants (Attica, Norwalk, Plymouth, and local law enforcement officers) have also been dismissed, the only active claims in this case are official capacity claims against the Federal Defendants for declaratory and injunctive relief (Claims 1–3 & 10–13).

3

The Federal Defendants now offer three reasons why this Court lacks subject-matter jurisdiction: (1) there has not been a waiver of sovereign immunity (Doc. 170 at 15–20); (2) Plaintiffs lack standing (Doc. 170 at 20–46); and (3) the statutory claims do not allow for suit against the United States (Doc. 170 at 46–47).

Further, even if this Court finds it has subject-matter jurisdiction, the Federal Defendants argue they are entitled to summary judgment on each of Plaintiffs' claims. First, Plaintiffs cannot prevail on their Equal Protection claim because they cannot demonstrate they were treated differently than a similarly situated, but non-protected, class of individuals (Doc. 170 at 11). Second, Plaintiffs' Fourth Amendment claims fail as a matter of law because each incident with the Border Patrol was a consensual encounter -- not a seizure -- followed by probable cause to make an arrest, and further, such claims cannot succeed because Plaintiffs cannot demonstrate an unconstitutional policy or custom (Doc. 170 at 11). Third, Plaintiffs' Due Process claims fail because Plaintiffs have not sufficiently pled or provided evidence that the Federal Defendants violated a procedural or substantive right under the Constitution (Doc. 170 at 11–12). Fourth -- and last -- Plaintiffs cannot prevail on their conspiracy claims because the United States is not a "person" who can be sued under 42 U.S.C. §§ 1983 or 1985 (Doc. 170 at 12).

Plaintiffs disagree with each contention, arguing jurisdiction is proper because their claims fit within the waiver of sovereign immunity under the Administrative Procedure Act ("APA"), and that the individual Plaintiffs have standing because they are likely to be subject to repeated racial profiling by the Border Patrol (Doc. 187 at 6–7). Plaintiffs also argue the Organizational Plaintiffs (IWP and FLOC) have standing on their own behalf "because their mission has been frustrated by the Federal Defendants' pattern and practice of racial profiling," as well as on behalf of their constituents

4

(Doc. 187 at 6).  Plaintiffs lastly assert that summary judgment on their constitutional claims is inappropriate because the record contains various disputes of material facts.

## STANDARDS OF REVIEW

Motions to dismiss for lack of subject-matter jurisdiction under Federal Civil Rule 12(b)(1) fall into two general categories:  facial attacks and factual attacks.  *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); *Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A factual attack, which the Federal Defendants assert in this case (Doc. 170 at 15 n.5), does not question the sufficiency of the pleading itself.  *Ritchie*, 15 F.3d at 598.  Rather, a factual attack is "a challenge to the factual existence of subject matter jurisdiction."  *Id.*  "On such a motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Id.* (internal citation omitted).  Plaintiffs, as the parties asserting jurisdiction, have the burden under a Rule 12(b)(1) motion, and jurisdiction must be established by a preponderance of the evidence.  *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005).

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When considering a motion for summary judgment, this Court must draw all inferences from the record in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether

the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

DISCUSSION

**This Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Claims**

• ***Plaintiffs' Constitutional Claims under the APA are Barred by Sovereign Immunity***

Plaintiffs assert three separate constitutional claims against the Federal Defendants under the APA (Claims 1–3). The Federal Defendants contend these claims are barred by the doctrine of sovereign immunity, which holds "the United States is immune from suit unless it consents to be sued." *United States v. City of Detroit*, 329 F.3d 515, 520 (6th Cir. 2003) (citing *Hercules, Inc. v. United States*, 516 U.S. 417, 422 (1996)). As the Sixth Circuit has acknowledged, the United States "has waived its immunity with respect to non-monetary claims" under the APA, 5 U.S.C. § 702, which provides:

> [a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . *Provided*, That any mandatory or injunctive decree shall specify the Federal officer of officers (by name or by title), and their successors in office, personally responsible for compliance.

Section 702's waiver of immunity applies in cases brought under the APA, as well as under other federal statutes. *City of Detroit*, 329 F.3d at 521 (citing *A.E. Finley & Assocs. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990)). However, in this case, Plaintiffs assert there is no need for this Court to decide whether a federal statute provides a basis for relief because their claims "fall squarely within the contours of judicial review of agency actions contemplated by the APA" (Doc. 187 at 15).

To prevail on this argument, Plaintiffs must convince this Court that their claims for relief seek "judicial review of agency action" under the APA.  *See Blakely v. United States*, 276 F.3d 853, 870 (6th Cir. 2002) ("By its own terms, [Section] 702 only applies where [a] party seeks judicial review of agency action.").  Furthermore, Plaintiffs' claims must satisfy 5 U.S.C. § 704, which limits the types of actions reviewable under the APA.  Specifically, Section 704 provides for review of two types of actions:  (1) agency action made reviewable by statute; and (2) final agency action for which there is no other adequate remedy in a court.

As the Federal Defendants note, Plaintiffs cannot demonstrate that judicial review is appropriate under the first type of Section 704 review because Plaintiffs have not identified an agency action that is "made reviewable by statute."  Therefore, Plaintiffs must rely on the second type of review by demonstrating they seek judicial review of a "final agency action for which there is no other adequate remedy in a court."  Plaintiffs cannot make this showing because they fail to identify a "specific agency action that has caused their alleged injuries" and instead "make broad, general allegations about the Border Patrol and its enforcement operations" (Doc. 170 at 18).  Federal Defendants cite *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990), a case where the Supreme Court held APA plaintiffs "must direct [their] attack[s] against some particular agency action that causes [them] harm."  To be sure, courts may only "intervene in the administration of the laws [] when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894.

This leaves the second type of review -- whether Plaintiffs can demonstrate a "final agency action."  The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  *See* 5 U.S.C. § 551(13).

7

Plaintiffs argue their allegations of unlawful stops, detentions, and apprehensions by the Border Patrol clearly qualify as "sanctions" under Section 551(13) (Doc. 187 at 13).  This Court agrees.  The APA expressly holds that sanctions include "conditions[s] affecting the freedom of a person," the "imposition of penalty," and "taking other compulsory or restrictive action."  *See* 5 U.S.C. § 551(10)(A), (C) & (G).  There is no doubt restraining, interrogating, and arresting individuals "affects" their freedom, as well as constitutes "restrictive action."  *See Indus. Safety Equip. Ass'n. v. EPA*, 837 F.2d 1115, 1119–20 (D.C. Cir. 1988) (construing "sanction" under the APA broadly to include an agency's penalizing of a party through adverse publicity).  Moreover, arresting individuals -- lawful or otherwise -- is a penalty, which in this case was imposed by the Federal Defendants.

There is also evidence suggesting the agency action in this case was not final.  To be deemed "final," agency action must satisfy two conditions: (1) it must mark the consummation of the agency's decision-making process; and (2) it must be one by which rights or obligations have been determined, or from which legal consequences will follow.  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).  Although Federal Defendants argue there is no "final" action in this case, they fail to explain how restraining, interrogating, and arresting individuals does not consummate their decision-making process regarding these individuals, or how their actions do not determine the individuals' "rights or obligations" from which legal consequences will follow.  Simply put, this Court is persuaded otherwise.

Although Plaintiffs have identified a final agency action that can be challenged under the APA, they have not satisfied the requirement that there be "no other adequate remedy."  Indeed, Federal Defendants note at least three plausible avenues of relief for the claims in this case.  First, Plaintiffs may seek relief by suing those individuals, in their personal capacities, who purportedly caused their

8

injuries.  *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 396–97 (1971) (implying a private right of action for damages where no other federal remedy is provided for the vindication of constitutional rights).  Plaintiffs argue that a *Bivens* action would be inadequate because the relief they seek in this case is non-monetary (Doc. 187 at 20–21), and that injunctive relief would serve as a better deterrent "to stop the unlawful seizures and profiling of Hispanics by the Border Patrol and their encouragement of local law enforcement agencies to assist them in apprehending individuals based on Hispanic appearance" (Doc. 187 at 21).

That argument, however, is inconsistent with the Supreme Court's repeated holdings that *Bivens* actions are an effective deterrent to constitutional violations.  *See, e.g.*, *Carlson v. Green*, 446 U.S. 14, 20–22 (1980).  "It is almost axiomatic that the threat of damages has a deterrent effect . . . surely particularly so when the individual official faces personal financial liability."  *Id*. at 21 (internal citation omitted).  As the Supreme Court acknowledged, "underlying the qualified immunity which public officials enjoy for actions taken in good faith [under *Bivens*] is the fear that exposure to personal liability would otherwise deter them from acting at all."  *Id.* at 21 n.7 (citing *Butz v. Economou*, 438 U.S. 478, 497 (1978)).  A *Bivens* action would therefore provide adequate relief.

Second, Plaintiffs could also pursue claims under the Federal Tort Claims Act ("FTCA") against those individuals who violated Plaintiffs' constitutional rights.  Plaintiffs provide no explanation why an FTCA claim would be inadequate in this case.  Finally, a specific statutory provision exists that permits the Attorney General to file a civil action to eliminate any alleged "pattern or practice" of unconstitutional conduct.  *See* 42 U.S.C. § 14141.  To the extent Plaintiffs believe the Federal Defendants are racially profiling Hispanics, Section 14141 also provides adequate relief.

Because Plaintiffs have not satisfied the requirement that there be "no other adequate remedy," they have not identified a final agency action that is reviewable under Section 704.  Accordingly, the APA cannot serve as a waiver of the United States' sovereign immunity in this case, and as such, this Court lacks jurisdiction for Claims 1–3.

- ***Plaintiffs' Conspiracy Claims Under the Civil Rights Statutes are Barred by Sovereign Immunity***

In addition to their constitutional claims, Plaintiffs assert four separate conspiracy claims against the Federal Defendants in their official capacities under 42 U.S.C. §§ 1983, 1985(3), and 1986 (Claims 10–13).  However, Plaintiffs' reliance on Section 1983 is misplaced, as that provision neither authorizes suits challenging actions taken under color of *federal* law, nor waives the United States' sovereign immunity.  *See Strickland ex rel. Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997); *see also Hall v. United States*, 773 F.2d 703, 707 (6th Cir. 1985) ("Federal officials do not violate [S]ection 1983 by acting under color of federal law.").  Indeed, the "actual nature and character" of the Federal Defendants' actions in this case -- even assuming they conspired with state authorities -- were federal, not state.  *Strickland*, 123 F.3d at 866.

Unlike Section 1983, the scope of Section 1985(3) "is considerably broader and can reach conspiracies composed of federal officers or federal employees."  *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) (citing *Hobson v. Wilson*, 737 F.2d 1, 19–20 (D.C. Cir. 1984)).  In other words, there is no requirement that the offending conduct be committed under color of state law.  However, sovereign immunity bars Section 1985(3) claims brought against the United States and its officers acting in their official capacity.  *See, e.g.*, *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000); *Aff'l Prof'l Home Health Care v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Mousseaux v. United States*, 28 F.3d 786, 787 (8th Cir. 1994).  The same is true for Plaintiffs' claims under Section

10

1986.  *See Davis*, 204 F.3d at 726 ("Sovereign immunity . . . bars [Section] 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."); *Aff'l Prof'l Home Health Care*, 164 F.3d at 286.  Plaintiffs have not met their burden of demonstrating a waiver of that immunity, and therefore Claims 10–13 cannot proceed in this Court.

- ***Plaintiffs' Claims Are Not Subject to the "Ultra Vires Exception" to Sovereign Immunity***

Plaintiffs summarily argue that their claims in this case fall under the so-called "ultra vires exception" to sovereign immunity (Doc. 187 at 21).  *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689–90 (1949).  *Larson* articulated two circumstances, not relevant in this case, where the requested specific relief would not implicate sovereign immunity: (1) where the officers' actions are beyond their statutory authority; and (2) where the statute conferring power upon the officers is unconstitutional.  *See TransAmerica Assur. Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 260 n.2 (6th Cir. 2007).  To invoke the exception, Plaintiffs "must do more than simply allege that the actions of the officer are illegal or unauthorized."  *Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (internal quotation omitted).  The complaint must allege sufficient facts "to establish that the officer[s] [were] acting 'without any authority whatever,' or without any 'colorable basis for the exercise of authority.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)).

The Second Amended Complaint fails to meet this standard, as there is no allegation that 8 U.S.C. § 1357 is unconstitutional, or that the federal officers were acting without authority.  In fact, Plaintiffs' theory in this case is directly opposite:  the Border Patrol authorizes its SBY agents to maintain "a practice of profiling individuals of Hispanic and Mexican appearance for questioning and detention" (Doc. 187 at 6), and Plaintiffs wish to change that alleged practice by Border Patrol agents

11

under Section 1357.  But Plaintiffs are **not** challenging Defendants' activities as outside the scope of their statutory authority.  For these reasons, Plaintiffs' ultra vires argument is unconvincing.

### CONCLUSION

Because this Court lacks jurisdiction to consider Plaintiffs' claims, this case must be dismissed. Accordingly, there is no need to consider the Federal Defendants' standing arguments or their alternative Motion for Summary Judgment.  The Motion to Dismiss is granted.

IT IS SO ORDERED.

_s/ Jack Zouhary_
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 19, 2012
